THE ATTORNEY-GENERAL ex rel. The Board of Riparian
Commissioners *vs.* THE HUDSON TUNNEL RAILROAD
COMPANY.

1. The state has the reversion in fee in any lands leased by the Board
of Riparian Commissioners, lying under the waters of the bay of New
York, adjacent to the city of Jersey City, between the original line of high
water and the line fixed for the exterior line for piers in the Hudson river.

2. It holds the fee simple absolute in lands under water between such
exterior line of piers and the state line.

3. The act of March 21st, 1874, extending the time for the completion
by the Hudson Tunnel Railroad Company of their proposed tunnel, did
not confer upon that company, organized under the general railroad law,
the right to construct their tunnel in the land of the state under the waters
of the Hudson, without first obtaining consent of the Board of Riparian
Commissioners.

4. The Hudson Tunnel Railroad Company were permitted to proceed to
condemnation as against the lessees of lands lying under the waters of the
Hudson, leased to the Morris and Essex Railroad by the Board of Riparian
Commissioners, but enjoined from taking possession of those lands, or the
land between the exterior line of piers and the state line, until consent of
the state should have been obtained.

On motion to dissolve injunction, on the information and
the affidavits annexed.

The information is filed by the Attorney-General, at the
relation of the Board of Riparian Commissioners, for an in-
junction against the Hudson Tunnel Railroad Company, to
restrain them from " possessing, entering upon, going or being
upon the land of the state mentioned in the information, or
any part thereof, for the purpose of making their tunnel on
or in that land, and from doing any work or act in or on that
land for or towards making the tunnel, or any part thereof,
and from condemning the land or any part of it, and from
doing any act or thing against any person or corporation
whatsoever, in, about or towards, or for the purpose of con-
demning that land or any part thereof." The land referred

to is described in the information as being bounded on the north by the line between the cities of Hoboken and Jersey City; on the south by Twelfth street in Jersey City; on the west by the original line of high water mark, and on the east by the boundary line between the States of New York and New Jersey, in the middle of the Hudson river.

The information states that the tract was heretofore, at high tide, all under water; that in recent years divers tenants of the state have filled in a portion of the land and reclaimed it, while the larger part of it is still, at all times, under the tidal waters of the Hudson river; that the riparian commissioners were appointed pursuant to the act entitled "an act to ascertain the rights of the state and of riparian owners in the land lying under the waters of the bay of New York and elsewhere in this state," approved April 11th, 1864, and the several supplements thereto; that the third section of the supplement of March 31st, 1869, to that act, provides that, without the grant or permission of the commissioners, no person or corporation shall fill in or build upon, or make any erection on, or reclaim any of the land under the tide waters of this state in New York bay, Hudson river or Kill von Kull, and that any person or corporation so offending, shall be guilty of a purpresture, which shall be abated at the cost and expense of such person or corporation, on application of the Attorney-General, under decree of the Court of Chancery, or by indictment in the county in which the same may be, or opposite to and adjoining which the purpresture may be; that by the twelfth section of the same supplement, it is further provided that the commissioners may commence proceedings in the name of the State of New Jersey, by ejectment or otherwise, against persons and corporations trespassing upon or occupying the lands of the state under water, or which were theretofore under water, and the Attorney-General is thereby required to commence and prosecute such actions as may be instituted or directed by the commissioners; that on or about the 28th day of April, 1875, the said commissioners let and demised to the Morris and

Essex Railroad Company, for certain yearly rents reserved,. to be paid by them to the state, a part of the land above described, extending from the middle of Fifteenth street, in Jersey City, on the south, to and north of Twentieth street,, on the north, and from the .original line of high water, on the west, out into the Hudson river to the line fixed in the river by the commissioners for the exterior line of piers ;. but the lease was upon the express condition that if it should happen that the yearly rent should, at any time, be in arrear for sixty days next after the same should become due, it should lie lawful for the state, without demand for the rent, to enter the demised premises, not only to distrain, but to re-enter them, and to have, possess, and enjoy them.

The information further states, that on or about the 22d day of December, 1871, the commissioners,. by lease of that date,. for certain yearly rents reserved to the state, let and demised to the Jersey Shore Improvement Company, another portion of the land, extending from the middle of Fifteenth street, on the north, to Twelfth street, on the south, and from the original line of high water, on the west, into the Hudson river, to the exterior line for piers, upon the like condition as the first-mentioned lease. So that the state still has, in the lands so demised to those companies, an annual rent issuing out of the lands, and a reversion therein.

The information further states,. that in or about the month of November, 1874, the Hudson Tunnel Railroad Company,. claiming to have been incorporated under the general railroad law, filed in the office of the secretary of state a map and plan of the tunnel for railroad purposes, which they proposed to construct from a point in Fifteenth street, in Jersey City, westerly of the original line of high water ; thence under the surface of the land and under the water of the Hudson river, across the river into the city of New York ; the route of the proposed tunnel, from Provost street, in Jersey City,. being beneath the surface of the land in the middle of Fifteenth street easterly, to, or near to, the exterior line of solid filling, and then with a bend or curve to the north

of about five degrees, to extend across the river. The tunnel is to be twenty-six feet wide and twenty-four feet high, inside measurement, and from a point about fifty feet easterly of Provost street to the middle of the river, a distance of over a mile, it is located and intended to be built and used in the land of this state. That in or about November, 1874, the tunnel company, on the route of the tunnel in the land of this state, about one hundred feet westerly of Hudson street, sank a working-shaft about thirty feet in diameter and thirty or forty feet deep, and lined and supported the sides of it with a brick wall, which shaft still remains open ; that while the shaft was being sunk, the further prosecution of the work was stopped by injunction from this court, issued against the tunnel company, at the joint suit of the Morris and Essex Railroad Company and the Delaware, Lackawanna and Western Railroad Company, until on or about the 17th of April, 1876, and that on that day the tunnel company made application, in writing, to the Honorable David A. Depue, one of the Justices of the Supreme Court of this state, to appoint a time and place to hear their application for the appointment of commissioners to appraise the value of a certain portion of the above-described land of the state, proposed to be taken for the tunnel, and to assess the damages and compensation to the owner or persons interested in that land ; that in the application, the tunnel company allege that the owner of the land proposed to be taken by them under the application is the Morris and Essex Railroad Company, and that the Delaware, Lackawanna and Western Railroad Company are lessees of the same land ; that the application does not, in any way, make the state or the riparian commissioners, or any officer of the state, party to the condemnation proceedings ; that the land proposed to be condemned in those proceedings, is on the route for the tunnel above described, and extends from the easterly line of Provost street along the middle of Fifteenth street, below the surface of the ground, to a point one hundred and eighty feet westerly from the bulk-head line of the Hudson river as surveyed ; thence curving to the left, with a radius eleven hun-

dred and forty-six and twenty one hundredths feet, a distance of one hundred feet, and thence on a course of five degrees northerly from the course of Fifteenth street, a distance of ten hundred and eighty feet, more or less, to the exterior line for piers ; that the justice appointed the 28th day of April, 1876, to hear the application, and that there was no reason to doubt that if the application were then made, he would then appoint commissioners accordingly.

The information further states that similar condemnation proceedings as against the Jersey Shore Improvement Company, at the suit of the tunnel company, to condemn a portion of the lands of the state leased to the improvement company, are pending before the said justice, and that commissioners therein were to be appointed by him on the 28th of April, 1876 ; that the avowed purpose and intent of the tunnel company are to obtain awards in the proceedings for condemnation as soon as possible, and at once to tender the amounts awarded, and then forthwith to take possession of the land and construct the tunnel therein to the state line ; that the tunnel, when constructed, and during the course of its construction, will be a purpresture and a nuisance in the lands of the state, will impair their value, and endanger and diminish the revenue of the state from them ; that neither the improvement company nor the railroad companies, who are the only tenants of the state occupying any part of the lands, have authorized or pretended to authorize the tunnel company to enter on any part of the land, or to locate or construct the tunnel therein, or consented to its location or construction there, but that all of them have constantly opposed the location or construction of the work : but the Attorney-General insists that if all of them had consented, or were to consent, such consent would not authorize or justify the construction of the tunnel in the lands of the state.

The information further states that the tunnel company have no power, right or authority to construct or use the tunnel in the lands of the state; that the Board of Riparian Commissioners has not, at any time, consented that the company may take

or use any of the above-described lands of the state, and that it has not, nor have any of its members, at any time, bargained, sold, leased, granted or conveyed any of that land to the tunnel company, and that neither the riparian commissioners nor the board can hereafter lease, sell or in any manner convey any of that land to the tunnel company, without violating and impairing the obligations of the contracts between the state and its tenants, contained in the leases for the land; and that the tunnel company having no right, power or authority to take, use or occupy any of the land of the state by condemnation, should not be permitted to institute or prosecute any proceedings of condemnation against any person or corporation whatever in respect to the land, as such proceedings must necessarily prejudice and complicate the rights of the state in and to the land, and cloud and injure its title thereto.

On the filing of the information, an injunction was issued pursuant to the prayer. The cause was heard upon the motion to dissolve the injunction.

*Mr. B. Williamson* and *Mr. H. S. White,* for motion.

*Mr. Vanatta,* Attorney-General, *contra.*

THE CHANCELLOR.

The defendants move to dissolve the injunction, on the ground of want of equity in the information. Part of the land in respect of which the aid of the court is sought, is held by the Delaware, Lackawanna and Western Railroad Company, under the lease from the riparian commissioners to the Morris and Essex Railroad Company; another part is held by the Jersey Shore Improvement Company, under like lease. Both leases are perpetual. The state has the reversion in fee in those parts, and holds the rest (so much as is between the exterior line of piers and the state line) in fee simple absolute. It appears by the affidavit of the president of the Delaware, Lackawanna and Western Railroad Company, and the president of the Jersey Shore Improvement Company, attached to the information, that neither of the above-mentioned compa-

nies has consented to the defendants' taking any part of the premises held by them respectively under lease. It appears, also, by the affidavit of the chairman of the Board of Riparian Commissioners, that that board has never made any grant, conveyance, or lease, or granted any license whatsoever to the defendants to construct their tunnel, or to do any act on or in the land described in the information, and that the information is filed at the request of the board. That the defendants have no right to construct their tunnel in the land of the state without first obtaining consent of the Board of Riparian Commissioners, unless such right was conferred upon them by the act of March 21st, 1874, (*Pamph. L.*, 1874, *p.* 1167,) by which the time for completing the first mile of their tunnel, and for completing the entire tunnel and railroad, is extended, is almost too obvious for remark. The general railroad law, under which the tunnel company was formed, provides (§ 37) that corporations formed under that act shall not take any land under water belonging to the state, until the consent of the riparian commissioners shall first be had and obtained, and those commissioners are thereby authorized to convey the land on such compensation as they themselves may fix. The act further provides that no corporation organized under that act shall be authorized to take, by condemnation, any lands belonging to the state. It is clear, then, that unless the right to occupy the land belonging to the state was, as the defendants' counsel contends that it was, granted by implication, by the act of March 21st, 1874, the defendants have no right to occupy them. That act recognizes the defendants as a corporation under the laws of this state, and extends the time for the completion of their work, as above stated, and it does no more. It was argued, on the part of the defendants, that because that act was passed subsequently to the general railroad law, and recognizes the defendants as a corporation under the laws of this state, and gives them time for the completion of their work, the legislature may be presumed to have thereby given the consent of the state to their occupation of so much of the

land of the state as the defendants proposed, (as the legislature must have known,) to occupy. It will be enough on this point to refer to the decision of the Court of Errors, in *Stevens* v. *Paterson and Newark R. R. Co.*, 5 *Vroom* 532, 553, in which it was held that a statute giving a railroad company the right to lay their road along a river, and to acquire the rights of the shore owners, will not be construed to give, by implication, the right to take the land of the state lying below high water line. Said the court: "The state is never presumed to have parted with any part of its property, in the absence of conclusive proof of an intention so to do." There is no evidence of an intention to grant the land of the state to the defendants, in the act of March 21st, 1874. On the case made by the information, the defendants have no right to occupy any part of the lands of the state. Nor can they obtain any by condemnation. The Attorney-General insists that they can obtain none from the riparian commissioners; for, according to the information, they are prohibited, by existing covenants made between them and their lessees, from giving such consent. The state is entitled to protection against the threatened injury to the reversion. That injury consists in taking possession of part of the property for, and adapting it to permanent and exclusive occupation as part of a great work. The ground on which the injunction on this point rests, is, that the defendants intend, as their president states, when they shall have made condemnation as against the lessees, to proceed at once with the construction of their tunnel.

But it is urged, on behalf of the defendants, that the injunction should be dissolved, at least so far as it restrains them from proceeding to condemn the rights of the lessees in the premises. It is insisted that the state should not be permitted to interfere with the proceedings against its lessees. Were the proceedings against strangers, there would be no ground for, nor propriety in the interference. But it is urged on the other hand, that the proceedings being against the lessees of the state, in respect to the land in which the state has a rever-

sion in fee, which may be affected if not by, yet by means of
or through the proceedings in condemnation, and it appearing
by the information, that the proceedings must necessarily, in
view of the covenant made by the state with the lessees, re-
ferred to in the information, be fruitless, this court should, in
the interest of all parties, stop the proceedings against the
lessees.   This is undoubtedly true, if the alleged impossibility
exists.   If it be assumed that the lessees will not consent to
the granting by the riparian commissioners to the defendants
of the right of way in the land under water beyond the
exterior line of piers, still this court cannot assume that the
right of way cannot be obtained.   The covenant may not be
found to present an insuperable barrier to the defendants'
work.   It appears to be a covenant based on the provision in
that behalf, contained in the fourth section of the supplement
to the act " to ascertain the rights of the state and of riparian
owners in the lands lying under the waters of the bay of New
York and elsewhere in this state," (*Pamph. Laws,* 1869, *p.*
1017,) and to be to the effect that the state will not make or
give any grant or license, power or authority affecting lands
under water in front of the lands leased to the above-men-
tioned lessees.   And here important considerations in this
controversy present themselves.   Is this covenant to be held
to absolutely deprive the state of all power of disposition over
the land in question?   Will it not be construed to prohibit
only such grants, licenses, powers and authority as will inter-
fere with the full and complete enjoyment of the leased prem-
ises, and as is reasonably to be presumed to have been in the
contemplation of the parties to the covenant?   Will the grant
of right of way to the defendants, far down below the bottom
of the river, in any wise interfere with the enjoyment of the
leased premises?   Besides these considerations, there is, also,
the query suggested in the opinion of the Court of Errors, in
*State* v. *Hudson Tunnel Railroad Co.,* decided at the November
Term, 1875, 9 *Vroom* 548, whether the lessees may not be
deprived, by condemnation, of the benefit of the covenant, so
far as may · be necessary for the grant of the right of way to

the defendants. I cannot assume that the defendants will not be able to acquire the right of way. There is even no ground for assuming that the riparian commissioners, if they find themselves free to do so, will not grant it.

The injunction should be modified so as to permit the defendants to proceed to condemn, as against the lessees. Otherwise, it will stand for the protection of the rights of the state. The defendants have declared their intention to proceed immediately with their work, after the conclusion of the proceedings for condemnation against the lessees. They not having acquired the right to do so, as against the state, the rights of the latter should be protected.